UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

**SUSAN TRACY and DEANA LISI,** individually, and on behalf of others similarly situated,

Plaintiffs,

**vs.**

**METLIFE GROUP, INC.,** a New York Company,

Defendant.

Case No. 25-cv-09104-JLR

Hon.: Jennifer L. Rochon

---

**FIRST AMENDED COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND CONTINUED RELIANCE ON JURY DEMAND**

Plaintiffs, SUSAN TRACY and DEANA LISI (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant METLIFE GROUP, INC. (hereinafter "Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* the New York Labor Law ("NYLL"), Article 6 § 190, *et seq*. and Article 19 § 650, *et seq*., the Rhode Island Minimum Wage Act ("RIMWA"), 28 R.I. Gen. Laws § 28-12-1, *et seq*., and the Rhode Island Wage Payment Act ("RIWPA"), 28 R.I. Gen. Laws § 28-14-1, *et seq*.

2. Defendant requires no introduction, as it is a nationally known insurance,

investment, and employee benefit company.

3. According to its website, Defendant "is a leading provider of insurance, annuities and employee benefit programs.[1]

4. To service its customers, Defendant employs hourly, remote customer service representatives (hereinafter "CSRs") throughout the country. Some of these CSRs are employed directly by Defendant, whereas others are jointly employed by Defendant through staffing companies. More specifically, the CSRs referenced herein assist customers who have questions or need assistance with obtaining insurance benefits from Defendant.

5. The CSRs have some variance in their job titles, but regardless of the internal job titles, all CSRs are subject to the same unlawful policies and procedures discussed herein. For example, Plaintiff Tracy was a direct employee of Defendant with the job title "Reviewer," whereas, Plaintiff Lisi was employed by Defendant through a staffing agency with the job title "Customer Service Consultant." In their respective positions, both Plaintiffs were paid by the hour, worked remotely for Defendant, were primarily responsible for fielding inbound calls from customers, were subject to the same unlawful employment policies discussed herein, and assert the same type of off-the-clock work claims against Defendant.

6. Defendant employs all CSRs referenced herein on an hourly basis, but it routinely fails to compensate them for all hours worked, including all overtime hours worked, as discussed herein.

7. In workweeks that the CSRs worked forty or more hours, Defendant's failure to compensate the CSRs for all hours worked resulted in a violation of state and federal overtime

---

[1] *See* https://www.metlife.com/about-us/corporate-profile/ (last accessed on 11/3/25).

laws. *See* 29 C.F.R. §778.315.

8. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

9. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

10. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

11. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

12. Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

13. Through its attendance, schedule adherence, and performance metrics, Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts, during their unpaid meal periods, and at the end of their scheduled shifts.

14. This results in CSRs not being paid for all time worked, including overtime.

15. In the course of performing their job responsibilities, Defendant's CSRs use

multiple computer networks, software programs, applications and phone systems.

16. The time CSRs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

17. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

18. Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping, schedule adherence, performance, and attendance policies.

19. Plaintiffs seek certification in this action of all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

20. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work but did not.

21. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

22. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future

workers will not be subjected by Defendant to such illegal conduct in the future.

**JURISDICTION**

23. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

24. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

25. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

26. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

27. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

28. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

29. Defendant simultaneously operates in two or more states, and so operated at all times relevant hereto.

30. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

31. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

32. This Court has personal jurisdiction over Defendant because it conducts business within the state of New York, has its principal place of business and headquarters in New York, is registered with the New York Department of State and employs individuals within the state of New York.

33. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of New York, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this District and Division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

35. Plaintiff Susan Tracy is a New York resident who worked for Defendant as a remote CSR in New York within two years from when she filed this lawsuit and joined the case.

36. During her employment with Defendant, Plaintiff Tracy worked as a CSR for

Defendant assisting its customers with life insurance benefits. She worked directly for Defendant, not through a staffing agency.

37. Defendant paid Plaintiff Tracy for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $20.00 per hour.

38. Plaintiff Tracy signed a consent to join this collective action lawsuit. ECF No. 1-1, Tracy Consent to Join.

39. Plaintiff Deana Lisi is a Rhode Island resident who worked for Defendant as a remote CSR in Rhode Island within two years from when she filed this lawsuit and joined the case. Defendant required Plaintiff Lisi to attend in-person training with other CSRs at its Warwick, Rhode Island facility.

40. During her employment with Defendant, Plaintiff Lisi worked for Defendant as a CSR assisting its customers with life insurance benefits and with pension benefits. She worked for Defendant through a staffing agency.

41. Defendant paid Plaintiff Lisi for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $20.00 per hour.

42. Plaintiff Lisi signed a consent to join this collective action lawsuit. ECF No. 24-1, Lisi Consent to Join.

43. Defendant is a New York company. According to the New York Department of State records, Defendant's ID # is 2795265 and its principal place of business is 200 Park Avenue, New York, New York 10166.

## GENERAL ALLEGATIONS

44. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices

within the last two (2) years. Plaintiff Tracy's employment began with Defendant in 2016 through a staffing company, but she was converted to a W2 employee in 2019. Up until the pandemic, she worked in one of Defendant's brick-and-mortar facilities, but after the pandemic moved to a remote position permanently.

45. Upon information and belief, Defendant utilizes staffing agencies (a.k.a. temp agencies) to provide them with CSRs on a trial basis. If the CSR provided though a staffing agency provides satisfactory customer service to Defendant's customers through the trial, then Defendant hires them as a direct employee. All CSRs, including those provided by staffing companies, are required to comply with Defendant's employment policies and procedures.

46. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions and completing other paperwork related to the calls received; and (e) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

47. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

48. The CSRs' schedules result in many CSRs routinely working unpaid overtime, as more fully explained herein.

49. Throughout their employment with Defendant, Plaintiffs were required to work a

substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

50. At all relevant times, Defendant controlled the CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

51. Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

52. Defendant provided all CSRs with the computer hardware and software required to perform their jobs, and trained them on the use of the same. Even CSRs employed through staffing agencies are provided with a computer issued by Defendant.

53. Defendant's CSRs all perform essentially the same or similar tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

54. These programs, applications, and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

55. Defendant's CSRs all follow the same self-recording timekeeping process, are subject to the same relevant timekeeping, scheduled adherence, and attendance policies, and are subject to quality assurance reviews (performance metrics) based on the same or similar criteria.

56. Defendant instructs and trains CSRs to have all their computer networks, software programs, and applications open and ready at the start of their scheduled shifts, and under no circumstances more than five (5) minutes after the start of their scheduled shifts. CSRs must complete this bootup process before they can log into Defendant's phone system to begin taking phone calls and before they clock in.

57. CSRs cannot complete the entire computer bootup process within the five (5)

minutes.

58. Through its policies and practices, Defendant effectively prohibits CSRs from recording the start of their work as a time prior to their scheduled start time.

59. Defendant schedules CSRs to work for forty hours, but prohibits them from reporting any unapproved overtime on their timecards. In fact, Defendant's written overtime policy, which is applicable to all CSRs, requires management approval for the submission of any overtime hours.

60. At the same time, Defendant requires CSRs to be call ready no more than five (5) minutes after the start of their scheduled shift. These policies and practices routinely result in unpaid work, as CSRs cannot complete the bootup process within five (5) minutes. Instead, to comply with Defendant's uniform policies, CSRs must begin booting up their computer prior to their scheduled start time.

61. Additionally, because of these policies, CSRs are routinely paid based on their scheduled hours, rather than the actual hours they worked. For example, as illustrated below, Plaintiffs timecards reflect they were regularly paid by Defendant for *exactly* forty (40) hours and to the exclusion of the pre-, mid-, and post-scheduled time discussed herein.

| **Plaintiff Tracy** | |
|---|---|
| **Pay Period Beginning and Ending** | **Paid Hours** |
| 1/22/2024 to 1/28/2024 | 40 |
| 02/05/2024 to 02/11/2024 | 40 |
| 02/19/2024 to 02/25/2024 | 40 |
| 03/16/2024 to 03/31/2024 | 40 |
| 09/30/2024 to 10/06/2024 | 40 |
| 10/14/2024 to 10/20/2024 | 40 |
| 10/21/2024 to 10/27/2024 | 40 |
| 11/04/2024 to 11/10/2024 | 40 |
| 11/18/2024 to 11/24/2024 | 40 |

| | |
|---|---|
| 12/02/2024 to 12/8/2024 | 40 |
| 12/9/2024 to 12/15/2024 | 40 |
| 12/16/2024 to 12/22/2024 | 40 |
| 01/06/2025 to 01/12/2025 | 40 |
| 01/27/2025 to 02/02/2025 | 40 |
| 02/03/2025 to 02/09/2025 | 40 |
| 02/17/2025 to0 2/23/2025 | 40 |
| 02/24/2025 to 03/02/2025 | 40 |
| 03/03/2025 to 03/09/2025 | 40 |

| **Plaintiff Lisi** | |
|---|---|
| **Pay Period Beginning and Ending** | **Paid Hours** |
| 6/1/2025 to 6/7/2025 | 40 |
| 6/8/2025 to 6/14/2025 | 40 |
| 8/17/2025 to 8/23/2025 | 40 |
| 8/24/2025 to 8/30/2025 | 40 |
| 9/07/2025 to 9/13/2025 | 40 |
| 9/14/2025 to 9/20/2025 | 40 |
| 9/21//2025 to 9/27/2025 | 40 |
| 10/5/2025 to 10/11/2025 | 40 |
| 10/19/2025 to 10/25/2025 | 40 |

62. Defendant's uniform policies, applicable to all CSRs, foster significant off-the-clock work, as CSRs must engage in a cumbersome process of booting up their computers, connecting to networks, loading and logging into computer programs, and reviewing emails with work instructions before the start of every shift.

63. By virtue of its written policies and through its management's instruction, Defendant pressures CSRs to load and log-into their required computer systems *before* recording their start and end times in Defendant's timekeeping system.

64. Furthermore, Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

65. These performance metrics necessarily require that CSRs be logged into all

computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

66. Indeed, Defendant enforces their policy of requiring CSRs' computer networks, programs and applications to be open and ready before clocking in, through its performance metrics and schedule adherence policies.

67. Upon returning from lunch, CSRs are required to be call ready the moment their unpaid lunch period ends, which requires them to return from lunch early to get themselves back into a call ready state before going back on the clock.

68. Defendant was aware that this off-the-clock work was occurring. For example, Plaintiff Tracy's supervisors instructed her that she should only report scheduled hours. Similarly, Plaintiff Lisi also complained directly to her supervisor that the bootup process could not be completed within five minutes.

69. Failing to accurately account and pay for all the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

70. Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

71. Defendant knew or should have known that off-the-clock work was routinely occurring by virtue of the fact that many CSRs regularly reported only scheduled hours on their timecards, CSRs were instructed to report only scheduled hours, and because CSRs complained that five minutes was insufficient time for the pre-, mid-, and post-shift work discussed herein.

72. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by

Defendant.

73. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twenty (20) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

74. This time could easily be recorded, accounted for, and paid, but Defendant chose not to credit such time as time worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

75. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

76. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

77. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen (15) to twenty (20) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

78. Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to perform a cumbersome and time-consuming process to become call ready and clock in. The process began when the CSRs turned on the computer, waited for Windows to load, then entered a username and password to log into windows. Next, CSRs were required to connect to Defendant's virtual private network (VPN) using a dual authentication process.[2] Once

[2] A dual factor authentication log-in process requires an individual to receive a code to their cell phone or other device, then after receiving the code, input the same into the computer. This process is inherently more time-consuming than single factor authentication.

connected to the VPN, the CSR must then load and log into several essential work programs and web-based applications.

79. Prior to the start of their scheduled shifts, Defendant also requires CSRs to read emails with work instructions and announcements for the day, which further pressures them into performing off-the-clock work

80. The off-the-clock pre shift computer bootup time to be call ready at the start of their shift required approximately fifteen (15) to twenty (20) minutes. The process could not be completed within five (5) minutes.

81. The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities. CSRs must have all of the above-referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls. CSRs must connect to Defendant's VPN to complete their job duties and the only reason to connect to the VPN is to complete their job duties.

82. Defendant fails to compensate CSRs for the computer boot up tasks.

83. Instead, as discussed above, Defendant maintains attendance, adherence, and performance policies that require them to be call-ready at the start of their scheduled shift and within two minutes of clocking in.

84. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

**B. <u>Meal-Period Off-the-Clock Work</u>**

85. Defendant provides their CSRs with one unpaid half hour lunch break per shift.

86. However, the CSRs do not receive the full lunch period because Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

87. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

88. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to be call-ready the moment their lunch period ends. As a result, CSRs must return from their lunch early to perform at least part of the boot up process outlined above because they are routinely logged out of applications for inactivity.

89. On most days, CSRs spend approximately three (3) to five (5) minutes performing this computer bootup work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

90. Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C. Post-Shift Off-the-Clock Work

91. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and

applications utilized during their shifts.

92. The shutdown and logout process requires another two (2) to three (3) minutes of off the clock work per shift.

93. Plaintiffs and other CSRs were also required to review emails and complete paperwork that was unfinished during their shifts off-the-clock at the end of their scheduled shifts.

94. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

95. Defendant's policies also prevent CSRs from including time worked after the end of their scheduled shift on their timecards. The results in CSRs being underpaid and often results in them being paid only for their scheduled hours, rather than the hours they worked.

96. Defendant did not compensate CSRs for all the time spent completing paper work, reviewing emails, and shutting down and logging out of their essential work systems.

97. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. <u>Defendant Benefitted from the Uncompensated Off-the-Clock Work</u>

98. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

99. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of their CSRs.

100. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period, and post-shift activities.

101. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

102. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

103. At all relevant times, Defendant used their attendance, adherence, performance, and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period, and post-shift off-the-clock work.

104. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began. The same is true when returning from their unpaid lunch periods.

105. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period, and post-shift activities they performed.

106. Because Defendant's CSRs often worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

107. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period, and post-shift activities was compensable under the law.

108. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

109. Despite knowing CSRs performed work before and after their scheduled shifts and

during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work, and instead suffered and permitted it to happen.

110. Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

**JOINT EMPLOYMENT ALLEGATIONS FOR CSRS EMPLOYED THROUGH STAFFING AGENCIES**

111. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

112. The definition of "employer" under the FLSA is not limited to the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs*., 603 F.2d 748, 754 (9th Cir. 1979).

113. Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (*quoting* 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n.21 (1985) (same).

114. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

115. Two or more employers may jointly employ someone for purposes of the FLSA.

*Falk v. Brennan*, 414 U.S. 190, 195 (1973).

116. All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

117. The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id*. at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

118. Under the Rhode Island laws stated herein, the test to determine whether a person is an employee for an employer is even broader, focusing on whether the employer has the right to control the method and means of performing the work. *See, Sebren v. Harrison*, 552 F. Supp. 3d 249, 257 (D.R.I. 2021).

119. All relevant times, Defendant employed the CSRs provided to it through staffing agencies. Defendant directly controlled the CSRs' employment. This includes direct or indirect control over their ability to earn money through its contracts with staffing companies.

120. Defendant provided CSRs with their computers.

121. Defendant trained CSRs on how to perform their job duties and comply with Defendant's employment policies and procedures.

122. Defendant required CSRs to abide by its employment policies and performance metrics.

123. Defendant provided all CSRs with a supervisor who was a direct employee of Defendant, and who enforced all of Defendant's employment policies on CSRs.

124. Defendant provided CSRs with performance reviews.

125. Defendant had the ability to discipline all CSRs, and when necessary, terminate their employment.

## FLSA COLLECTIVE ACTION ALLEGATIONS

126. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former hourly CSRs, including those employed through staffing companies, who worked for Defendant in the United States at any time during the three years preceding the order granting conditional certification, plus any time the statute of limitations was tolled, and up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

127. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

128. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

129. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

130. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.

131. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours

worked in excess of forty (40) hours per workweek;

b. Willfully approving timecards that Defendant knew or should have known did not report all hours worked; and

c. Willfully prohibiting its employees from recording all of the time Plaintiffs and the members of the FLSA Collective worked for the benefit of Defendant;

132. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for all hours worked in excess of forty (40) per workweek.

133. Defendant's unlawful conduct has been widespread, repeated, and consistent.

134. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

135. The employees on behalf of whom Plaintiffs seek collective certification for are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

136. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

137. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

138. Many similarly situated current and former CSRs in the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised

notice of this lawsuit and the opportunity to join it.

139. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

140. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

141. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

142. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 NEW YORK CLASS ACTION ALLEGATIONS**

143. Plaintiff Tracy brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> ***All current and former hourly CSRs, including those employed through staffing agencies, who worked for Defendant in New York at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiff Tracy reserves the right to amend this definition as necessary.

144. The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical. Plaintiff Tracy reasonably estimates there are thousands of Rule 23 New York Class members. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

145. There is a well-defined community of interest among members of the Rule 23 New

York Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 New York Class members spend on start-up/log-in activities, reading emails, and shut-down activities off the clock each shift is compensable time;

b. Whether Defendant failed to pay all "wages" owed to the Rule 23 New York Class, as contemplated by New York law;

c. Whether Defendant unlawfully withheld or diverted wages from the Rule 23 New York Class in violation of New York law;

d. Whether Defendant failed to properly notify each member of the Rule 23 New York Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made from their wages;

e. Whether Defendant properly furnished each Rule 23 New York Class Member with an itemized statement showing the gross pay and deductions;

f. Whether Defendant failed to timely pay all wages owed to the Rule 23 New York Class, as required by New York law; and

g. Whether the Rule 23 New York Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 New York Class but otherwise not paid, and if so, the appropriate amount thereof.

120. Plaintiff Tracy's claims are typical of those of the Rule 23 Class in that she and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Tracy's claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

121. Plaintiff Tracy will fully and adequately protect the interests of the Rule 23 Class

and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Tracy nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

122. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

123. This case will be manageable as a Rule 23 class action. Plaintiff Tracy and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

124. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

125. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 RHODE ISLAND CLASS ACTION ALLEGATIONS**

126. Plaintiff Lisi brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on

her own behalf and on behalf of:

> ***All current and former hourly CSRs, including those employed through staffing agencies, who worked for Defendant in Rhode Island at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Rhode Island Class"). Plaintiff Lisi reserves the right to amend this definition as necessary.

146. The members of the Rule 23 Rhode Island Class are so numerous that joinder of all Rule 23 Rhode Island Class members in this case would be impractical. Plaintiff Lisi reasonably estimates there are thousands of Rule 23 Rhode Island Class members. Rule 23 Rhode Island Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

147. There is a well-defined community of interest among members of the Rule 23 Rhode Island Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Rhode Island Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 Rhode Island Class members spend on start-up/log-in activities, reading emails, and shut-down activities off the clock each shift is compensable time;

b. Whether Defendant failed to pay the "wage" owed to the Rule 23 Rhode Island Class, as contemplated by Rhode Island law;

c. Whether Defendant unlawfully withheld, deducted or diverted wages from the Rule 23 Rhode Island Class in violation of Rhode Island law;

d. Whether Defendant failed to pay the Rule 23 Rhode Island Class all wages earned and owed on their regular payday in violation of Rhode Island law;

e. Whether Defendant issued deficient wage statements to the Rule 23 Rhode Island Class in violation of Rhode Island law; and

f. To the extent a CSR in the Rhode Island Class spent some or all of her time classified as an independent contractor, whether Defendant misclassified the CSRs under Rhode Island law.[3]

127. Plaintiff Lisi's claims are typical of those of the Rule 23 Class in that she and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Lisi's claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

128. Plaintiff Lisi will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Lisi nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

129. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

130. This case will be manageable as a Rule 23 class action. Plaintiff Lisi and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer

[3] To the extent a CSR in the Rhode Island Class was not classified as an independent contractor at any point during their employment, then they would not be entitled to the civil penalties and associated damages alleged herein.

and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

131. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

132. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

133. Plaintiffs re-allege and incorporate all previous paragraphs herein.

134. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

135. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

136. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

137. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

138. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and

the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

139. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

140. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

141. Defendant's violations of the FLSA were knowing and willful.

142. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

143. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

144. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 New York Class Action)**
**New York Labor Law, Article 19 § 650, *et seq*.:**

138. Plaintiff Tracy re-alleges and incorporates all previous paragraphs herein.

139. The New York Labor Law (NYLL) governs the activities of and imposes obligations on Defendant as the New York Rule 23 Class Members' "employer." NYLL, Article

19, § 651.

140. NYLL mandates payment of a statutory minimum wage, currently established by NYLL, Article 19 § 652, for each hour worked by employees.

141. "Wage" under NYLL includes “allowances, in the amount determined in accordance with the provisions of this article, for gratuities and, when furnished by the employer to employees, for meals, lodging, apparel, and other such items, services and facilities”. NYLL, Article 19 § 651.

142. Defendant had policies and practices of requiring Plaintiff Tracy and the Rule 23 New York Class Members to perform compensable pre-shift, meal-period, and post-shift work without compensation.

143. Defendant's failure to pay wages was knowing and willful, demonstrating deliberate disregard for Plaintiff Tracy and the Rule 23 New York Class Members rights under the NYLL.

144. As a result of Defendant’s conduct, Plaintiff Tracy and the Rule 23 New York Class Members are entitled to unpaid wages, liquidated damages equal to their unpaid wages, prejudgment and post-judgment interest, reasonable attorneys’ fees, and costs pursuant to the NYLL.

**COUNT III**
**(Rule 23 New York Class Action)**
**Overtime Wages, New York Labor Law, Article 19 § 650, *et seq*.:**

145. Plaintiff Tracy re-alleges and incorporates all previous paragraphs herein.

146. The overtime provisions of the NYLL and its supporting regulations applies to Defendants and protects Plaintiff Lisi and the Rule 23 New York Class Members.

147. Defendants failed to pay Plaintiff Tracy and the Rule 23 New York Class Members the premium overtime wages to which they were entitled under the NYLL – at a rate of 1.5 times their regular rate of pay for all hours worked beyond 40 per workweek.

148. Through its knowing or intentional failure to pay Plaintiff Tracy and the Rule 23 New York Class Members the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendant willfully violated the NYLL, Article 19, § 650 et seq., and supporting New York State Department of Labor regulations.

149. Due to Defendants' violations of the NYLL, Plaintiff Tracy and the Rule 23 New York Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

**COUNT IV**
**(Rule 23 New York Class Action)**
**Proper Annual Wage Notices, New York Labor Law, Article 6 § 190, *et seq*.:**

150. Plaintiff Tracy re-alleges and incorporates all previous paragraphs herein.

151. Defendants have failed to furnish pursuant to the NYLL with proper annual wage notices as required by NYLL, Article 6, § 195(1)(a),

> Provide his or her employees, in English or in the language identified by each employee as their primary language, at the time of hiring, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; … the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

152. Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff Tracy and the

Rule 23 New York Class Members are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff Tracy and the Rule 23 New York Class Members with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

**COUNT V**
**(Rule 23 New York Class Action)**
**Accurate Wage Statements, New York Labor Law, Article 6 § 190, *et seq*.:**

153. Plaintiff Tracy re-alleges and incorporates all previous paragraphs herein.

154. Defendants failed to supply Plaintiff Tracy and the Rule 23 New York Class Members with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

155. Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff Tracy and the Rule 23 New York Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

**COUNT VI**
**(Rule 23 New York Class Action)**
**Unlawful Wage Deduction, New York Labor Law, Article 6 § 190, *et seq*.:**

156. Plaintiff Tracy re-alleges and incorporates all previous paragraphs herein.

157. NYLL, Article 6, § 193 prohibits an employer from making any deductions from employee wages except as expressly permitted by law or authorized in writing by the employee.

158. Defendant unlawfully withheld or deducted portions of wages, including compensable time worked pre-shift, during meal-periods, and post-shift, without proper authorization from Plaintiff and the Rule 23 New York Class Members.

159. Defendant's unauthorized deductions were deliberate and constitute willful violations of the NYLL.

160. As a result of Defendant's unlawful conduct, Plaintiff Tracy and the Rule 23 New York Class Members are entitled to recover amounts of unlawful wage deductions, liquidated damages of these deductions, prejudgment and post-judgment interest, attorneys' fees, costs, and further relief pursuant to NYLL Article 6, § 198.

**COUNT VII**
**(Rule 23 Rhode Island Class Action)**
**Unpaid Overtime, Rhode Island Minimum Wage Act, 28 R.I. Gen Laws § 28-12-1, *et seq*.**
**and Rhode Island Payment of Wages Act 28 R.I. Gen Laws § 28-14-1, *et seq*.**

161. Plaintiff Lisi re-alleges and incorporates all previous paragraphs herein.

162. Pursuant to Fed. R. Civ. P. 8(d), this claim for unpaid overtime is pled in the alternative to Count I by Plaintiff on behalf of herself and the Rule 23 Rhode Island Class. *See Mendizabal v. Faria Meat Mkt. LLC*, No. 26-CV-062-JJM-AEM, 2026 WL 1025374, at *3 (D.R.I. Apr. 9, 2026) (holding RIMWA claim for overtime may proceed alongside FLSA claim).

163. The RIMWA provides that "no employer shall employ an employee for a workweek longer than forty (40) hours unless the employee is compensated at a rate of one and one-half (1 1/2) times the regular rate at which he or she is employed for all hours worked in excess

of forty (40) hours per week." 28 R.I. Gen. Laws § 28-12-4.1.[4]

164. The RIPWA provides that "[e]very employer shall establish a regular payday on which wages shall be paid in full." 28 R.I. Gen. Laws § 28-14-2.

165. Furthermore, the RIPWA entitles Plaintiff Lisi and the Rule 23 Rhode Island Class Members to "all due wages" upon "a predesignated date no less than twice per month." 28 R.I. Gen. Laws § 28-14-2.2.

166. As explained herein, Defendant failed to pay Plaintiff Lisi and the Rule 23 Rhode Island Class Members at one and one-half times her regular rate for all hours worked in excess of forty hours per week, in violation of the RIMWA.

167. Defendant also failed to pay Plaintiff Lisi and the Rule 23 Rhode Island Class Members all wages due and owning, in violation of the RIPWA.

168. The RIMWA states that "any person aggrieved by this chapter shall be entitled to relief as provided in chapter 14 of this title ('Payment of Wages'). 28 R.I. Gen. Laws § 28-12-19.

169. Defendant's violations of the RIMWA and RIPWA were willful.

170. Plaintiff Lisi and Rule 23 Rhode Island Class Members are "entitled to recover any unpaid wages and/or benefits, compensatory damages, and liquidated damages in an amount up to two (2) times the amount of unpaid wages and/or benefits owed, as well as an award of appropriate equitable relief, including reinstatement of employment, fringe benefits and seniority rights, and reasonable attorney's fees and costs, and/or such other appropriate relief or penalties authorized

[4] In 2012, the Rhode Island General Assembly amended the Wages Act by the adoption of R.I. Gen. Laws § 28-14-19.2, which creates a private right of action for "the failure to pay wages ... in violation of chapters 28-12 [the Minimum Wage Act] and/or 28-14 [the Wages Act]."

under this chapter and chapter 12 of this title." 28 R.I. Gen. Laws § 28-14-19.2(a).

171. Additionally, regardless of a finding of willful misconduct, the claims of Plaintiff Lisi and the Rule 23 Rhode Island Class Members are subject a three (3) year statute of limitations. 28 R.I. Gen. Laws § 28-14-19.2(g).

**COUNT VIII**
**(Rule 23 Rhode Island Class Action)**
**Unpaid Straight Time Wages, Violations of Rhode Island Payment of Wages Act, 28 R.I. Gen Laws § 28-14-1, *et seq*.**

172. Plaintiff Lisi re-alleges and incorporates all previous paragraphs herein.

173. The RIPWA provides that "[e]very employer shall establish a regular payday on which wages shall be paid in full." 28 R.I. Gen. Laws § 28-14-2.

174. Furthermore, the RIPWA entitles Plaintiff Lisi and the Rule 23 Rhode Island Class Members to "all due wages" upon "a predesignated date no less than twice per month." 28 R.I. Gen. Laws § 28-14-2.2.

175. As explained herein, Defendant violated the RIPWA for failing to pay Plaintiff Lisi and the Rule 23 Rhode Island Class Members all wages earned and owed in workweeks that the hours worked did not exceed forty hours.

176. Defendant's violations of the RIPWA were willful.

177. Plaintiff Lisi and Rule 23 Rhode Island Class Members are "entitled to recover any unpaid wages and/or benefits, compensatory damages, and liquidated damages in an amount up to two (2) times the amount of unpaid wages and/or benefits owed, as well as an award of appropriate equitable relief, including reinstatement of employment, fringe benefits and seniority rights, and reasonable attorney's fees and costs, and/or such other appropriate relief or penalties authorized under this chapter and chapter 12 of this title." 28 R.I. Gen. Laws § 28-14-19.2(a).

**COUNT IX**
**(Rule 23 Rhode Island Class Action)**
**Deficient Wage Statements, Violations of Rhode Island Payment of Wages Act, 28 R.I. Gen Laws § 28-14-1, *et seq*.**

178. Plaintiff Lisi re-alleges and incorporates all previous paragraphs herein.

179. The RIPWA likewise requires that on every regular payday every employer furnish to its employees "[a] statement of the hours worked by that employee during the applicable pay period" and "a record of all deductions made from the employee's gross earnings during the pay period together with an explanation of the basis or reason for the deductions." 28 R.I. Gen. Laws § 28-14-2.1.

180. The RIPWA requires that "[e] very employer shall keep a true and accurate record of hours worked and wages paid each pay period to each employee." 28 R.I. Gen. Laws § 28-14-12.

181. In violation of the RIPWA, Defendant failed to furnish Plaintiff and the Rule 23 Rhode Island Class Members with accurate wage statements.

182. Plaintiff and the Rule 23 Rhode Island Class Members sustained damage by receiving deficient paystubs including the inability to verify wages, hours, and deductions by reviewing their wage statements.

183. Defendant's violations of the RIPWA were willful.

184. Plaintiff Lisi and the Rule 23 Rhode Island Class Members are entitled to all available remedies under Rhode Island law and specifically 28 R.I. Gen. Laws § 28-14-19.2(a).

**COUNT X**
**(Rule 23 Rhode Island Class Action)**
**Misclassification, Violations of Rhode Island Payment of Wages Act, 28 R.I. Gen Laws § 28-14-1, *et seq*.**

185. Plaintiff Lisi re-alleges and incorporates all previous paragraphs herein.

186. The RIPWA states that "misclassification of a worker whether performing work as a natural person, business, corporation, or entity of any kind, as an independent contractor when the worker should be considered and paid as an employee shall be considered a violation of this chapter." 28 R.I. Gen. Laws § 28-14-19.1.

187. For the reasons explained herein, Defendant misclassified Plaintiff Lisi and other members of the Rule 23 Rhode Island Class as independent contractors when they should have been classified as employees, in violation of the RIPWA.

188. Defendant's violation of the RIPWA was wilful.

189. Plaintiff Lisi and the Rule 23 Rhode Island Class Members are entitled to all available remedies under Rhode Island law and specifically 28 R.I. Gen. Laws § 28-14-19.2(a).

190. Additionally, Plaintiff Lisi and the Rule 23 Rhode Island Class Members are entitled to civil penalties "in an amount not less than one thousand five hundred dollars ($1,500) and not greater than three thousand dollars ($3,000) for each misclassified employee for a first offense and up to five thousand dollars ($5,000) for each misclassified employee for any subsequent offense, which shall be shared equally between the department and the aggrieved party." 28 R.I. Gen. Laws § 28-14-19.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, and the Rule 23 Classes respectfully request judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 New York Class) pursuant

to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Tracy's New York state wage law claims (Counts II-VI);

c. Certifying this action as a class action (for the Rule 23 Rhode Island Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Lisi's Rhode Island state wage law claims (Counts VII-X)

d. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the members of the Rule 23 New York Class, and the members of the Rule 23 Rhode Island Class, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e. Designating Plaintiff Tracy as the representative of the Rule 23 New York Class, and undersigned counsel as Class counsel for the same;

f. Designating Plaintiff Lisi as the representative of the Rule 23 Rhode Island Class, and undersigned counsel as Class counsel for the same

g. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

h. Declaring Defendant's violations of the FLSA were willful;

i. Declaring Defendant violated the NYLL as cited herein;

j. Declaring Defendant's violations of the NYLL were willful;

k. Declaring Defendant violated the RIPWA and RIMWA as cited herein;

l. Declaring Defendant's violations of the RIPWA and RIMWA were willful;

m. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

n. Awarding liquidated or trebled damages, as permitted by law;

o. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

p. Awarding civil penalties, as permitted by law;

q. Awarding compensatory damages, as permitted by law;

r. Awarding other pre- and post-judgment interest to Plaintiffs on these damages as permitted by law; and

s. Awarding such other and further relief as provided by law and/or that this Court deems appropriate.

## RELIANCE ON JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 11, 2026

Respectfully Submitted,

**ASH LAW, PLLC**
***/s/ Charles R. Ash, IV***
Charles R. Ash, IV (MI Bar P73877) (PHV)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*